NOT FOR PUBLICATION (Doc. Nos. 6, 7, 18, 24)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TR WORLDWIDE PHILLYFOOD, LLC,<br>　　　　Plaintiff,<br><br>　　　　v.<br>TONY LUKE, INC;<br>ANTHONY LUCIDONIA, SR; and<br>NICHOLAS LUCIDONIA,<br>　　　　Defendants. | Civil No. 16-1185 (RBK/JS)<br><br><br><br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on Tony Luke, Inc., Anthony Lucidonia, Sr., and Nicholas Lucidonia ("Defendants")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 24). For the following reasons, Defendants' Motion to Dismiss is **GRANTED** and all other outstanding motions are **DENIED AS MOOT**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed the instant complaint on March 1, 2016. Compl. (Doc. No. 1). This complaint was a response to Plaintiff learning that Defendants had filed a complaint in New Jersey Superior Court for breach of contract. Compl. ¶ 106. Plaintiff alleges violations of the Lanham Act for trademark infringement and unfair competition, as well state law claims of unfair competition and breach of contract. *Id.* ¶ 107-38.

This case began in 2007, when Defendants Anthony Lucidonia, Sr. ("Tony Sr.") and Nicholas Lucidonia assigned their rights in the Tony Luke's trademarks to Anthony Lucidonia, Jr. ("Tony Jr."). *Id.* ¶ 32. Tony Sr. and Nicholas continued operating the original Tony Luke's

1

locations while Tony Jr. and Plaintiff provided promotional, financial, and logistical support to the brand. *Id.* ¶ 35-37.

In 2010, the parties restated their agreement, which granted Tony Sr. and Nicholas latitude to open two additional locations using the marks in addition to their existing locations. *Id.* ¶ 38-41. Tony Jr. and his business partner, Ray Rastelli, have invested millions of dollars into the Tony Luke's brand and have promoted the brand through television appearances, social media, and franchising. *Id.* ¶ 54-62. TR Worldwide's efforts have benefited Defendants with increased sales and additional business selling prepared products to franchisees. *Id.* ¶ 63-65.

Plaintiff alleges that Defendants resented Tony Jr.'s position as the "face" of the Tony Luke's brand. *Id.* ¶ 68-70. Tony Sr. fired Tony Jr. in July 2015 and refused to provide franchisees with prepared vegetable sides and sauces. *Id.* ¶ 71. Defendants' restaurants then began deviating from franchise requirements, purchasing meats from unauthorized vendors and offering unauthorized menu items. *Id.* ¶ 72-73. In November 2015, Defendants advertised a name change to "The Original Tony Luke's," which conflicted with the authorized use of Plaintiff's marks. *Id.* ¶ 74-76. Defendants also began contacting vendors to change the restaurant logos on paper products and menus and removed franchise-specific décor. *Id.* ¶ 78-79.

On November 25, 2015, Plaintiff sent Defendants a Notice of Default/Termination based on section 5.1 of their Amended Trademark Agreement, which demanded Defendants cure the breaches of their agreement lest Plaintiff terminate their license. *Id.* ¶ 83. Defendants responded with a letter laying out provisions of the agreement they believed Plaintiff had violated. *Id.* ¶ 84. Plaintiff sent a notice of continuing default on December 23, 2015. *Id.* ¶ 85. Plaintiff then became aware that Defendants were planning to directly compete with Plaintiff's trademark. *Id.* Defendants then disparaged the quality of Tony Luke's franchises via social media. *Id.* ¶ 87.

Plaintiff issued a final notice of termination for Defendants' rights under the Amended Trademark Agreement on December 31, 2015. *Id.* ¶ 88. Defendants informed Plaintiff that they intended to compete at the Front and Oregon location with their new name. *Id.* ¶ 90. Plaintiff alleges this competition violates the Amended Trademark Agreement. *Id.*

Plaintiff alleges that Defendants have continued to sell food using Plaintiff's recipes, tradenames, marks, properties, and trade dress. *Id.* ¶ 91. Plaintiff claims that Defendants' presentation is confusingly similar to their brand. *Id.* ¶ 92-97. The parties attempted to come to a settlement, but those discussions resulted in Defendants filing the above-mentioned state court complaint. *Id.* ¶ 106.

Defendants originally filed a motion to dismiss on April 1, 2016. (Doc. No. 6). This Court denied the outstanding motion to dismiss, motion enforce settlement, and motion to strike without prejudice on December 16, 2016 after receiving a letter from Defendants' counsel. Dec. 16, 2016 Order (Doc. No. 22). Defendants' letter suggested that Plaintiff may lack standing to bring the instant claims. The Court ordered the parties to brief the matter for review.

## II.  STANDARD

A motion to dismiss based on lack of standing must be brought under Federal Rule of Civil Procedure 12(b)(1) because standing is jurisdictional. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In the second type of 12(b)(1) motion, the court does not presume that the allegations in the plaintiff's complaint are true, and "the trial court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Id.* Furthermore, the plaintiff has the burden of proving that the court has subject matter jurisdiction. *Id.* If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice. *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155-56 (3d Cir. 1997).

## III. DISCUSSION

### A. Section 32 of the Lanham Act

Section 32(a) of the Lanham Act establishes liability for any person who uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive" without consent of the registrant. 15 U.S.C. § 1114(a). This Court has recognized that "Section 32 of the Lanham Act grants standing to assert a claim of trademark infringement to the registrant of the mark and defines registrant as including the registrant and its legal representative, predecessors, successors and assigns." *Zinn v. Seruga*, 05-3572, 2009 WL 3128353, at *21 (D.N.J. Sept. 28, 2009) (citations omitted).

Plaintiff's initial brief regarding standing lays out the history of ownership for the intellectual property at issue. Pl.'s Br. at 1-4 (Doc. No. 25). Plaintiff argues that the Intellectual Properties License Agreement dated January 1, 2010 ("2010 Agreement"), which granted Plaintiff a "royalty-free and worldwide license to use the Properties for all lawful purposes" defeats Defendants' claim that Plaintiff was never assigned the relevant trademarks. *Id.* at 3, 7. Plaintiff also rebuts Defendants' claim that the 2010 Agreement precludes Plaintiff from bringing this action. *Id.* at 7. The relevant language from section 10.6 of the 2010 Agreement states:

4

> [Plaintiff] shall promptly advise TLE of any alleged infringement of the Properties, and TLE at its sole discretion may take any action deemed appropriate by TLE. [Plaintiff] shall have no right to take any action against a third party if such action involves the Properties or other property rights of TLE. However, at the reasonable request of TLE, [Plaintiff] shall cooperate with TLE in any such action.

2010 Agreement (Doc. No. 26-1).

Plaintiff also argues that Tony Jr. (the sole member of TLE) consented to Ray Rastelli, bringing the instant action so "Tony Luke, Jr. would not be compromised by litigation involving his family." Pl.'s Br. at 7. Plaintiff points to the language in section 10.6 of the 2010 Agreement requiring Plaintiff to cooperate with any action against a third party. *Id.*

Defendants respond that the 2010 Agreement should be read at face value. Defs.' Br. at 5 (Doc. No. 26). Defendants specifically note that section 10.6 of the 2010 Agreement outright states that Plaintiff has "*no right to take any action against a third party* if the action involves the [Trademarks] or other property rights of TLE." *Id.* (emphasis added). Defendants address Plaintiff's consent argument in two ways: Defendants argue that Plaintiffs cite no law to suggest oral consent is sufficient to confer standing and that Plaintiff has not provided a certification or evidence to suggest TLE consented to the instant suit. *Id.*

Plaintiff responds that the section 10.6 of the 2010 Agreement establishes that Plaintiff "shall cooperate with TLE" in any action to enforce the marks if TLE should request such cooperation. Pl.'s Reply Br. at 3 (Doc. No. 27). Plaintiff argues that it is bringing this suit with Tony Luke, Jr.'s consent to enforce the rights. *Id.* Plaintiff further argues that an exclusive license can, in some instances, confer standing for the licensee to enforce the mark. *Id.* Plaintiff cites *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 959 (2004) for this proposition, which itself cites to particularly useful opinions from the First and Seventh

Circuits. The First Circuit has stated that the definitions section of the Lanham Act "provides that the term registrant embraces the assignee thereof, and an exclusive licensee is an assignee" while "[a] nonexclusive licensee is not an assignee and, therefore, has no cause of action under section 1114." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 n.2 (citations omitted). The Seventh Circuit has explained that "a truly exclusive licensee, one who has the right even to exclude his licensor from using the mark . . . is equated with an assign[ee] since no right to use [the mark] is reserved to the licensor, and the licensee's standing derives from his presumed status as an assignee." *Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 531-32 (7th Cir. 1998) (citation omitted).

As an initial matter, the Court finds that Plaintiff is a licensee, rather than assignee, of the trademarks at issue. Furthermore, while Plaintiff is the exclusive licensee, it is not exclusive as to the rights of TLE, the owner of the marks. As Defendants have noted, section 10.6 of the 2010 Agreement specifically states that Plaintiff "shall have no right to take any action against a third party if such action involves the Properties or other property rights of TLE." 2010 Agreement. This language is clear; Plaintiff does *not* have a contractual right to enforce TLE's rights against Defendants or any other third party. The Court further finds that Plaintiff is not a presumed assignee as described above in *Finance Investment Co.* because TLE retained the exclusive right to take action against third parties.

The Court also finds that Tony Jr.'s alleged consent is not sufficient to give Plaintiff standing to pursue this action. Section 10.6 of the 2010 Agreement requires Plaintiff to "cooperate" with TLE in an action against a third party; the 2010 Agreement does not permit Plaintiff to bring an action against a third party. The Court does not find that "cooperation" entails taking sole responsibility for an action that is expressly prohibited in the preceding

6

sentence of the agreement. Therefore, the Court holds that Plaintiff lacks standing to assert a claim under section 32 of the Lanham Act. Accordingly, Count I is dismissed.

### B. Section 43 of the Lanham Act

Section 43 of the Lanham Act allows a broader range of parties to institute civil actions to protect use of trademarks. Section 43 creates a cause of action for "any person who believes that he or she is likely to be damaged" by the false or misleading use of a protected mark in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B).

Defendants argue that Plaintiff lacks standing to bring a claim under section 43(a) because "the express terms of the license prohibited [Plaintiff] from bringing suit in their own capacity." Defs.' Br. at 6 (quoting *Fin. Inv. Co.*, 165 F.3d at 532). Plaintiff counters that the 2010 Agreement expressly commands it to cooperate with an action at the request of TLE.

As discussed above, the 2010 Agreement plainly prohibits Plaintiff from taking action against a third party if said action involves the intellectual property of TLE. Accordingly, Count II is dismissed.

### C. Remaining State Law Claims

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Plaintiff's claims under federal law have been dismissed, and there is no affirmative justification for this Court to retain supplemental jurisdiction over the state law claims at this point in the

litigation. As such, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Counts Three through Five are therefore dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED** and all other outstanding motions are **DENIED AS MOOT**.


Dated:   01/30/2017                                                             s/ Robert B. Kugler
                                                                                                       ROBERT B. KUGLER
                                                                                                       United States District Judge